EL PUEBLO, DEMANDANTE Y APELADO, *v.* TORRES, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Segunda, en causa por infracción al artículo 328 del Código Penal.

No. 1451.—Resuelto en febrero 27, 1920.

NON SUIT.—Cuando un acusado, a quien se desestima una moción de *non suit,* prosigue el juicio y presenta su prueba, se entiende que renuncia a su moción de *non suit.*

PRUEBA CONTRADICTORIA.—Cuando a pesar de ser la prueba ligeramente contradictoria el peso de ella justifica la sentencia, ésta será confirmada, aun sin necesidad de aplicar la doctrina general de que siendo la prueba contradictoria el Tribunal Supremo aceptará la apreciación que de ella haya hecho la corte inferior.

AUTOMÓVILES—VELOCIDAD.—El hecho de creer que el camino que tiene una persona ante sí está libre, no justifica la marcha a cualquier velocidad.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Francis y de Jesús.*

Abogado del apelado: *Sr. J. E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Se imputó al acusado José Gregorio Torres, por virtud de una denuncia radicada en la Corte Municipal de Río Piedras, el delito de haber infringido el artículo 328 del Código Penal como quedó enmendado, alegándose en dicha denuncia que el referido acusado el día diez de febrero de 1919 en el barrio de Hato Rey, de Río Piedras, conducía un automóvil de modo tan negligente e ilegal que chocó con un automóvil de carga causando varias contusiones a José Bascarán, saliendo además el propio acusado con contusiones con motivo de tal choque.

Los errores que han sido alegados son dos, a saber: Primero, que la corte debió haber declarado con lugar una moción de *non suit* que le fué presentada; y segundo, que la prueba era insuficiente para declarar culpable al acusado.

Respecto al primer señalamiento de error podemos simplemente manifestar que hubo prueba suficiente *prima facie* para declarar culpable al acusado, como se verá de la discusión que hacemos de la prueba en conjunto. Además, un acusado que prosigue y presenta su propia prueba, como ocurre en este caso, renuncia a su moción de *non suit*. *El Pueblo v. Ojeda,* 26 D. P. R. 438.

Para sostener su alegación de que la prueba ante la corte de distrito no justificó la sentencia dictada contra él, sostiene el acusado que la velocidad que llevaba en el lugar del accidente no era excesiva, siendo solamente de 25 ó 30 millas

por hora, y para justificar .que el acusado iba de tal manera dentro del límite de velocidad fijado por la ley, el apelante trata de probar que a una distancia de cien pies del sitio en que ocurrió el accidente se vió obligado a parar el automóvil que guiaba y que era imposible que un automóvil de la clase que él iba manejando, pudiera desarrollar una velocidad mayor de 25 ó 30 millas por hora.

Un policía que no .prestó declaración directa en cuanto a la velocidad, declaró que el *truck* entró en la carretera que va de San Juan a Río Piedras, en la parada 27 y media con dirección a Río Piedras; que entró por el lado derecho del camino; que estaba completamente en la carretera cuando el automóvil del acusado chocó con la rueda trasera derecha del referido *truck*, haciendo que el pesado carro de carga diera una vuelta redonda quedando de frente a San Juan y ocasionando fuertes desperfectos tanto en el *truck* como en el automóvil.

Uno de los hombres que trabajaban en el carro prestó declaración tendente a mostrar el hecho de que el *truck* salía de un callejón al lado derecho de la carretera que va hacia Río Piedras y giró hacia Río Piedras estando completamente en la carretera cuando llegó el automóvil del acusado y le cogió por la rueda trasera derecha; que los que iban en el *truck* miraron para ambos lados antes de entrar en la carretera y no vieron nada hasta cierta distancia por uno u otro lado; que el golpe fué tan fuerte que hizo que la máquina diera una vuelta redonda quedando de frente a San Juan.

El otro·testigo del Gobierno fué cierta persona que declaró que había vivido en la carretera desde hacía tres años; que presenció el choque y que el automóvil del acusado corría a una velocidad espantosa; que algunos de los vecinos le llamaron la atención gritándole "mire cómo corre ese automóvil"; que durante el tiempo que vive allí nunca había pasado un automóvil corriendo tanto como aquél.

Todos estos testigos prestaron declaración tendente a poner de manifiesto el hecho de que dos de los pasajeros del

automóvil del acusado fueron lesionados, recibiendo golpes más o menos fuertes.

Creemos que éste fué evidentemente un caso *prima facie* de negligencia de acuerdo con el artículo 328 del Código Penal.

Uno de los testigos del acusado, el hombre que sufrió más fuertes golpes, prestó declaración tendente a mostrar que el automóvil iba a una velocidad de 40 ó 50 millas por hora. Es cierto que al seguírsele preguntando dijo que el recuerdo que tenía del suceso no era muy claro pero la corte tenía derecho a creer en vista de su declaración, corroborada por las demás pruebas, que la apreciación que hizo de la velocidad no era exagerada.

El acusado y otros testigos también prestaron declaración tendente a mostrar que dicho acusado iba solamente a una velocidad de 25 ó 30 millas cuando ocurrió el accidente; también declaró el acusado que el *truck* había parado cuando él lo vió y que como dicho *truck* necesariamente tuvo que haber oido su *klaxon,* él creyó que tenía derecho a pasar y manifestó además que había visto el *truck* desde antes.

Una de las principales teorías de la defensa, según revela la declaración de un perito de la defensa era que como el automóvil del acusado tuvo que parar por encontrarse con un carro de pasajeros y siendo la distancia que quedaba entre el sitio donde tenía que parar el acusado y aquél donde ocurrió el accidente tan corta, hubiera sido imposible para el acusado desarrollar una velocidad de 40 ó 50 millas por hora.

Sin embargo, debe tenerse en cuenta que el primer testigo de la defensa dice que el conductor del carro de pasajeros manifestó que el acusado, lo mismo en el caso de haberse parado o no, pasó por su lado a una velocidad de ocho o diez millas por hora.

La contestación a esta teoría del acusado es que la corte tenía derecho a creer en vista de las declaraciones de los testigos, que el acusado llevaba una velocidad de cuarenta o

cincuenta millas por hora, si no más, independientemente del hecho de si la prueba del acusado era o no incompatible con esta teoría; que la distancia entre los dos sitios pudo haber sido mayor que la que el testigo de la defensa creyó que había; que el acusado pudo haber reducido insuficientemente su velocidad para evitar el choque al ver el *truck;* que el acusado no paró el automóvil, sino que solamente redujo su velocidad para pasar por el lado del carro de pasajeros, y aun que los testigos estuvieron completamente equivocados.

Los hechos físicos y la declaración de los testigos del Gobierno presentan un caso tan fuerte que todas las teorías incompatibles de la defensa tendrían que doblegarse aun sin hacerse aplicación de la práctica corriente de este tribunal al negarse a revocar las conclusiones de la corte inferior cuando no está convencida de que su resolución estaba muy claramente en contra del peso de la prueba, o que el acusado no tuvo un juicio imparcial.

Puesto que esta teoría del acusado no puede ser sostenida con éxito, no tenemos duda alguna de que el acusado, si bien se admitió que por lo general era un *chauffeur* cuidadoso, estaba infringiendo la ley.

Sin referirnos en particular a este acusado, no podemos combatir con bastante fuerza la idea de que por el hecho de haber visto dicho acusado, o creer que había visto el camino delante de él libre de obstáculos tenía derecho a seguir a cualquiera velocidad. Todo el mundo tiene igual derecho al camino, como se estableció en el caso de *El Pueblo* v. *Blandford,* 23 D. P. R. 625, y en los casos citados. Un gran número de *chauffeurs* tienen al parecer la idea de que porque el camino aparentemente esté sin obstáculos eso justifica el empleo de cualquier velocidad. En *State of Ohio* v. *E. E. Schaefer,* L. R. A. 1918–B, 451, que fué un caso de alegado homicidio ocasionado por manejar indebidamente un automóvil, la corte se expresó en los siguientes términos:

"Los que se ocupan de las estadísticas han hecho el cálculo de que cuando se confiere mucho poder al tipo corriente de los hombres, un diez por ciento de éstos se convierte en tiranos o en tontos. El cálculo es muy conservador. En verdad que de haber algún error es por razón de que la cifra es demasiado baja y bien puede dudarse si la proposición queda reducida considerablemente en el caso de poner 300,000 automóviles con su tremenda velocidad, fuerza y propulsión bajo el gobierno y dirección, o falta de cuidado de conductores corrientes. El diez por ciento de los 300,000 serían 30,000 que están en manos de tiranos, tontos o personas incompetentes y maníáticos en velocidad, que son una amenaza constante y un peligro para el noventa por ciento de conductores de automóviles prudentes, para otros conductores de vehículos y para los millones de viandantes.

"La idea de 'seguridad primero' no debe ser sacrificada por la de 'velocidad primero.' La prensa diaria está llena de accidentes que se evitan por milagro, desde lesiones insignificantes por una parte, hasta muertes instantáneas por otra. Bien puede decirse 'que la locomotora del ferrocarril ha ocasionado centenares de muertes, pero que el automóvil está ocasionando la muerte a millares.' "

La velocidad de cuarenta o cincuenta millas por hora si bien está fuera del límite señalado por la ley, puede ser buena de no ocurrir un accidente. Una persona que va a esta velocidad y particularmente la que se excede de ella, debe estar muy segura de no invadir los derechos de los demás. Cualquier persona que mire a una distancia razonable hacia ambos lados del camino y no vea nada que se aproxime tiene derecho a cruzar dicho camino. Un *chauffeur* debe tener tal dominio de su aparato que pueda evitar el tener que ocasionar daños a los vehículos, o a los viandantes que tienen el derecho de cruzar el camino y lo hacen comedidamente.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.